Good morning, Susan Morrison appearing in Pro Hoc Vitae for purposes of oral argument on behalf of the appellant. This appeal challenges the October 2009 order of probate to Judge Coleman granting summary judgment for the appellee as well as other related orders, which resulted in a judgment of over $190,000 against the then 76-year-old Anna Kuznar, the widow of Mitchell Kuznar after 24 years of marriage. We believe these rulings were not only erroneous on multiple grounds, but also profoundly unfair. Briefly with regard to the context of this appeal, it should be remembered this is a summary judgment matter. The trial court was required to construe the record against the moving party, in this case the appellee Amelia, and to grant the relief only if the matter was free from doubt. We firmly believe the trial court erred in this matter to grant summary judgment when these requirements were not met and when there were material issues of fact and dispute, which could only be resolved by holding the equitable apportionment hearing under the Illinois Putrid and Spouse Statute. First let me address briefly the standing issue that we addressed in our brief. At page 11 of our initial brief we quoted the statutory provision which sets forth the requirements for substitution of a representative when a party to an action dies. Amelia died in 2006 and the power of attorney that Tomas Kuznar was acting under died with her obviously. The lower court erred, we submit, by allowing Tomas Kuznar to continue to act for his deceased mother without filing a verified motion, without publishing notice, without complying with what the Illinois statute requires. They accepted what happened in Poland in terms of making him the representative of the state. If you look closely at the order that Mr. Kuznar holds out as his authority and you look at the specific terms of that order, it only names Tomas and his sister as equal heirs in a different court proceeding. Apparently no estate has ever been opened for Amelia. Naming people as equal heirs is a far cry from appointing somebody as a fiduciary with all of the obligations that that entails. A couple other items for why that document was improperly admitted. We've attached a very recent Illinois appellate court opinion about the Apostille process which is under international treaty. In the case that came out after our first brief we attached it to our reply brief. That is the proper procedure for authenticating a document from a foreign country. Third, even if he had a document from another country which we firmly dispute, it doesn't excuse the appellee from the plain mandate of Illinois law. Why should somebody be excused from following Illinois statutory procedures simply because a deceased party is from a different country? It just is not how the procedure should work. The error has been further compounded because now a judgment has been entered in the name of the deceased Amelia, which is further evidence that there has never been an estate opened for her. So to say that his order that just in some different court proceeding which involved it wasn't apparently an estate proceeding, I mean not opening an estate for Amelia, just to say that they're equal heirs did not create an estate for Amelia. Now we have this oddity of having a judgment in the name of a deceased person. And as the court knows a deceased person is a non-entity. So based on the lack of standing of Tomas and further this judgment in the name of a deceased person which is improper, we believe that the pleadings filed on behalf of Amelia after her death should be stricken and that judgment vacated. Going on to what we believe is the most significant error in the substance of the probate court's October 2009 order was that court's reiteration of an earlier ruling in 2001 by Judge Budzinski that the Illinois putative spouse statute did not apply. Judge Budzinski was ruling with regard to a different category of funds than Judge Coleman was in 2009. As you know from reading the briefs here, as a result of an earlier appeal in this case, the appellant Anna had been deemed to be the putative spouse and Amelia was deemed to be the legal spouse of Mitchell. Now in 2003, this is after Judge Budzinski had ruled, an Illinois federal court ruled that the putative spouse statute did apply to distributions from a pension fund governed by ERISA. In that case, Central States Pension Fund v. Gray, which is attached to our initial brief as part of the appendix, the court in that case looked to state law to determine who was the surviving spouse and then observed that the Illinois putative spouse statute recognizes rights in both the putative and legal spouse and that the statute demands that the court apportion rights, apportion property and rights as appropriate in the circumstances and interests of justice. Now in the present case, the first ruling by probate Judge Budzinski, who was a state judge ruling on federal ERISA law, because the pensions are governed by that, he did not have the benefit of that federal court's 2003 reasoning. But Judge Coleman's ruling in 2009 came after the Central States case and we submit that she erred by ignoring the reasoning of the Central States case. As in Central States, the pension plan at issue here did not define surviving spouse and the probate court erred by failing to follow the putative spouse statute, which states, and I quote, a putative spouse acquires the rights conferred upon a legal spouse, and also further mandates that the court, and I quote, shall apportion property, maintenance and support rights among the claimants as appropriate and in the interests of justice. We've also cited to this court the Illinois case of in re marriage of Flores, that's at page 20 of our brief, which held it was reversible error for a court to fail to hold the evidentiary hearing and make the findings required by the statute once the finding is made that a person is a putative spouse. That's what happened here. We have a determination that Anna was a putative spouse, but no apportionment hearing has ever been held. So the August 23, 2001 order seems to me to be very clear and it states that the proceeds from the Kraft plan belong to, and I'm quoting, belong to the surviving spouse, Amelia Kostowska Kusner. And it doesn't say that it only goes to the remaining assets. Your Honor, if you look at the very, with all due respect, Your Honor, if you look at the precise language of that order, it specifically says, it refers to the assets held in the order, the disbursement of this remaining lump sum of funds that Anna had not yet received. But it does not say anything about this other category of funds that were no longer held in the Kraft Thrift Plan because they had long ago been dispersed to Anna and had been spent. It's, there are two totally different sort of bodies of funds here, Your Honor, and it would be. That would be totally different. There are all the funds in the Kraft plan. But that's not what the term of the order says. I don't see why the terms of the order make the distinction that you're trying to get this court to make. That part of them belong to Amelia and part of them are putate spots. I don't. Your Honor, we've cited that specific section. And if you look at what was ordered in that order of 2001, it does not order Anna to do anything. It is purely directed at the Old Kent Bank to pay over the terms of the bank account. And Your Honor, even if the court had made the ruling, as you suggest, it was clearly an inaccurate ruling and should not have been continued forward in light of the court's reasoning in the 2003 case. So we would submit that either way, either whether, as we argue, it did not address those separate category of funds. In fact, it's more like the nature of a damages claim trying to recover funds that have already been paid out and spent. If that had been the intent of that order, then there never would have been a reason for a separate petition to be filed by the petitioner. It was not a final order. It was subject to certainly be argued after 2009 that Judge Coleman made the same erroneous ruling as Judge Binsinski had. Why did you think that Judge Coleman was obligated to follow the central state's fund? It's non-presidential, non-binding on anybody, certainly not binding on her. Only, Your Honor, because it's a federal judge addressing federal law, which is ERISA. But we're not bound by it. The only ones we're bound by are decisions of the United States Supreme Court, or we certainly give deference to the Seventh Circuit. We don't give deference to the Northern District. But, Your Honor, this is dealing with ERISA federal law petitions. You can argue that there's compelling reason, but she certainly isn't bound. Well, that's correct, Your Honor, but the compelling reasoning is looking to state law  that once a putative spouse finding has been made, it mandates the court to hold that apportionment hearing, and that wasn't done. And it's eminently fair. The concern was that under ERISA law that perhaps there could only be one surviving spouse, but the reasoning in the Gray case shows that that is not the case, that the state law provision under the putative spouse, which was designed to avoid this all-or-nothing unfairness, is exactly the kind of reasoning that should be applied in this case. So we've got a federal judge telling us what state law means? No, it's a federal judge looking at a federal pension and then turning to state law. Well, without the interpretive state law, without him making a determination that the state law, under Illinois state law, where is his reasoning? But in this case, Your Honor, the state court should have looked on its own to the putative spouse statute. It did. But that's with entirely no analysis as to why. Well, they don't have to do analysis. We do, but they don't. Your Honor, it does not follow logically that if you declared somebody to be a putative spouse, that you would throw out what flows from that. And under the putative spouse statute, it describes what flows from that. I know I have only a brief time here, if I could just also address the other gross inequities of this order, as we've discussed in the brief, is the erroneous rulings with regard to both damages, post-judgment interest and pre-judgment interest. We pointed out the error that is contradicted by part of the record about a bank debit statement that shows that a higher amount was credited to or charged against Anna than it should have been, and the judgments did not follow the post-judgment statute with regard to what the 9% judgment interest can relate back to. There had been no liquidated sum determined in 2001. It was error for the courts to reach back to 2001, and the 9% interest could not possibly have started until there was a liquidated sum in 2009. In terms of the pre-judgment interest, also the statute was not followed in terms of there were no bases for ruling that pre-judgment interest should apply here. I would just submit that under the Illinois statute, under the Illinois case of in-ray marriage of Flores, which says it's reversible error not to hold an evidentiary hearing on a putative spouse, where that finding of a status of putative spouse has been made, is what is appropriate and it's what is fair here. We have a woman who only received $61,000 and some in pension benefits, the majority of which, almost $40,000, was spent on her husband's last expenses and bequests. Even before she had any idea that Tomas would be filing a claim on behalf of his deceased mother, which was about a year and a half after Mitchell died. So what has happened in this case is that she is being not only denied any of the retirement benefits that she worked for. The whole point of the post-judgment interest is the idea of trying to make the individual home, the judge accredited home, and that's what the court's intent was in allowing this 9% interest. It's saying that the plaintiff had the use of these funds when it had already declared in 2001 that all of the funds should have gone to Amelia, and so in an attempt to make the Amelia home, it awarded this interest. I don't see how you are bearing with that. Because there's something so fundamentally wrong here, Your Honor, where a person who has been married to someone for 24 years, as a putative spouse it was deemed, but nonetheless for that period of time, would be totally disinherited because the court thinks that as a legal matter, the putative spouse statute didn't apply. And that is what is wrong here, Your Honor. And not only has she been denied every bit of retirement that she and her husband saved for for 24 years, but she's being asked to pay twice for his final payments, that $40,000 that she paid out before there was ever any claim by Amelia. She's having to pay his final expenses and his requests twice, because now she's having to pay that same fund plus interest at an exorbitant rate on that amount to Amelia, the now deceased Amelia. It is simply so unfair, Your Honor. That's what the putative spouse statute was designed to remedy, that kind of all or nothing kind of result, where late in life, when someone dies, all of a sudden, it all goes away. That's not fair. It's not what the Illinois legislature intended. And the court below erred when they said that it didn't apply. I can't express more strongly that this is one of the most substantial miscarriages of justice that I have seen in my years of practice. And I would implore you that as a legal matter, the court was wrong to say the putative spouse statute did not apply. They felt compelled to do an all or nothing. And that's not what state law intended. So with all due respect, we urge you to have this matter remanded so that the appropriate putative spouse hearing can be held, so that the issues of the judgment interest, and again, judgment interest is a matter of statute. There clearly was not any liquidated sum back in 2001 that the court could have reached back to start 9% interest. It simply is contrary to the statute. There was no liquidated sum. There was discovery that went on by the appellee trying to determine what their damage claim would be. We didn't know that back in 2001. There could not have been a liquidated sum at that point. 9% interest is just wrong under the statute. And similarly, the prejudgment interest. All of those matters need to be corrected. And the most fundamental of all is a putative spouse evidentiary hearing as the legislature intended, and as this case so richly deserves, needs to be held. And if I could reserve five minutes of rebuttal, I would appreciate it. Can you tell me how he enters summary judgments in favor of dead people? Your Honor, there was a probate estate that was handled in Poland. The woman who passed away, Amelia Pia Stauska-Kuznar, was a decedent in Poland. So all the Polish laws were followed. So there's no requirement under any Illinois, and I brought the Illinois probate code, that a probate estate be opened in the state of... I asked you how do you enter a summary judgment in favor of a dead person? Well, technically... No, it's not. The punitive spouse shall pay those funds to the surviving spouse, who is now additionally entitled to receive prejudgment interest at the rate of 5%. There is no surviving spouse. The lady was dead when this order was entered. You have to have a summary judgment in favor of some estate. You can't have a judgment in favor of dead people. I understand, Your Honor, and the way that this case took place back in 2001, there was an order entered that basically stated precisely, and there was a hearing before Judge Baczynski back in August of 2001, where the court found that this craft thrift plan belongs to Amelia Pia Stauska-Kuznar and that the proceeds be turned over to her. At that point, there was only a certain amount of proceeds left. I understand all that, but once the lady died, you can't enter a judgment in her favor. You have to have somebody substitute in who's entitled to that judgment or entitled to enforce the claim of this lady. And our position is that Thomas Kuznar is that person based on the fact that we had the Polish... He may very well be, but the fact of the matter is that's not what the judgment says. The judgment says the surviving spouse is entitled to receive the post-judgment interest and she'll receive... It has to be paid by the punitive spouse to the surviving spouse. The lady's dead. But we have orders from the state of Poland, Your Honor, that basically say whatever proceeds are payable to the surviving spouse, and those are part of the record, should go to Thomas Kuznar and his sister Ingrid... Do you have any authority that stands for the proposition that a judgment payable to a person who's dead is valid under Illinois law? By the time the judgment was entered, the woman was already dead. Absolutely. If there's any sort of issue with that, the solution that we have to that is that in the country of Poland, there were proceedings, and those were spread of record and authenticated by the council of general of U.S. in Poland, and those were spread of record before the trial court, which says that any assets, and I'm paraphrasing, I don't have that page in front of me, shall be payable to Thomas Kuznar and Ingrid Gundek. Ingrid then ceded or gave... That we followed all of the appropriate legal mechanisms in the country. Let's try this again. The lady died on October the 11th, 2006. Correct. On October the 13th, 2009, a judge entered an order that said the putative spouse shall pay those funds to the surviving spouse, now additionally entitled to receive prejudgment interest. The lady had been dead for three years. You can't pay money to dead people. I understand that. And our position is based on the papers that were spread of record before the court that those proceeds that are payable to the surviving spouse, should be paid according to the Polish law of the case to Thomas Kuznar and Ingrid Gundek, who then gave those assets to... So this judgment order should have been a motion for summary judgment in favor of Thomas. Technically speaking, should the judge have written that it goes pursuant to the paperwork that was spread of record before the court for her saying where the proceeds are to be payable to? That obviously would have been better. But those papers, those documents, those legal documents that say the estate of Amelia Piastowska Kuznar, which were certified and they went through the proper channels in the country of Poland, are payable to Thomas Kuznar and Ingrid, should be filed. An analogous example here in Illinois is you have a small estate affidavit. Someone who dies with less than $100,000 can fill out a small estate... The family can fill out a small estate affidavit, say who the heirs are, and they can present that affidavit to a bank that's holding a $50,000 account, for instance. If the bank refuses to pay the $50,000 account, who files the lawsuit to the dead guy? Well, I haven't seen a situation where they've refused to... But if they did, who would file a lawsuit? The dead man? Or the person who's listed on the small estate affidavit in their own right? I think the person who signs the small estate affidavit... Could file a suit. If he wasn't entitled to be a judge, we should run in favor of Thomas. Not in favor of the dead person. In the name of the representative of the deceased, are you the trustee or the... My problem is I'm not licensed to practice in the country of Poland. When she died in Poland, the documents that were provided from the Polish estate is how I'll refer to it. Remind me of a summary administration here, probably because she died with very little assets, if any, besides the potential... Inheritance might not be the right word, potential rights that she has in this estate. So my supposition is, and I don't know, is that this was similar to a summary administration where it says, whatever she's entitled to is payable to these two people. So this would be the equivalent, I would argue, to a small estate affidavit or some sort of summary administration, which is absolutely something that is appropriate and followed here. In fact, under 755 ILCS 5-22-1, there's procedures under the probate code for paying money, you know, short of the site cited by counsel when you have a plaintiff versus a defendant and substituting an estate as a plaintiff or a defendant. This is a probate estate. It's not this similar situation to a personal injury cause of action or something like that where 5-2-1008 would apply instead. So there are ways that people, and people pay in probate estates to beneficiaries directly when presented with a small estate affidavit. That happens all the time. There's nothing different here than paying it to someone who would present a similar affidavit and the check does not get paid to the estate of John Doe deceased. Those checks get payable pursuant to the small estate affidavit directly to the errors listed in the final paragraph of that affidavit. This is very similar to that. I understand Your Honor's point, and a lot of times that is the way that it happens. But it also happens the other way where an estate will make payments, whether it's a judgment payment or a distribution pursuant to any other final closing order in a probate estate, they're paid all the time to the beneficiaries. It's said that the trial court erred in saying that the putative spouse statute did not apply and that it was simply a miscarriage of justice and unfair not to allow her client who had been, thought she was married for 24 years to the deceased not to take from his estate and from his graft funds. Sure, and if we're going to go beyond what's presented to the court, because keep in mind the 2001 court order was appealed. It was DWP'd because my opponent, the Amelia Pierce Towson Kusner side, chose not to follow up on the appeal. According to 304B, they properly filed a notice of appeal back in 2001, and under the abundance of cautions, what they were saying, that they filed a notice of appeal of that 2001 order timely. They chose not to pursue that and eventually this court DWP'd that order. So their time to go back and fight this 2001 order, which we've been proceeding on for 10 years, has already run. 304B certainly applies to this case because it finally determined the right of someone in an estate. If we want to get into fairness arguments, there's a whole bunch of joint assets, a house, and other assets she got. So the poor widow who got nothing is not an accurate assessment. It's not something we brought up in the briefs. I don't think it's even applicable here today, but since counsel brought up in oral argument, that's just to make it sound like she's getting nothing now is far from the truth. So I would point that out in terms of the equity type arguments that have been brought. Back in 2001 when I was in this case, it feels like this case has been going on forever, there was, we appeared before the judge and there was, whether you call it a hearing, we stood up before the judge, each side made their arguments, and the judge made a ruling back in 2001. It's taken 10 years to get to the point where we could actually get a judgment because every time we try to collect on this, there's a motion to reconsider, there's briefing schedules, there's depositions. So you've got a guy who died in 1995 and we're appearing in 2011 on his probate estate. We need to bring finality to this matter and that's why you have 304B to begin with. If somebody's legal rights are affected in terms of inheriting from an estate, then you have a right to appeal it and need to appeal it right then and there so you don't proceed in a probate estate for the next 10 years under a false assumption. So I would posit to this Court that there should be no, the only issue, and I put that, I tried to put that as many times as I could in my brief, before the Court, is how much, is the judgment calculation. That's the only thing that's before this Court today and that is how to calculate the judgment amount. And the fact of the matter is... I think that's the only thing that's before this Court because that was already appealed. The 2000 order was appealed and it was upheld by this Appellate Court that the surviving spouse was Amelia Pietowska Kusner. At that point, we then went to collect the pension plan because the pension plan says that it belongs to the surviving spouse. There was an order in August 23, 2001 saying just that, that those proceeds belonged to her. That order was also appealed and that one was DWP. There was a third appeal before this Court based on a 214.01 argument that I withheld some document that would have solved this whole case and that's been taken care of as well. So this is the fourth appeal and I think the only issue in this particular appeal is what the judgment amount should be because that's what was before the Court in ruling on the summary judgment. So... I guess to answer your question, yes. I'm not saying the Court doesn't have jurisdiction. What I'm saying is this is the only issue that is before this Court today and we believe Judge Coleman got the judgment amount correct. There was in the hearing to determine the amount of judgment. The only evidence was by the Kraft Thrift Plan administrator who gave values as to what it was, what it should be, and what it would be back on the date, on or around, it was a date in 2009 I believe. So the judge, that's the only evidence and there was no contrary evidence that the amount was too high or too low or incorrect. They didn't present any of it. That's why the summary judgment is appropriate. There was no genuine issue presented before the trial court of any fact, any material fact, that the judgment amount was wrong. And that's what we're before this Court on. It's the 2009 order determining the judgment amount. She was relying on the law of the case that was established in the 2000 and 2001 court orders that have been highlighted in both sets of briefs. And it's really that simple. Once we get this judgment amount solidified, the case can be closed. There's nothing else to probate. I mean that's been done many, many years ago. Technically right now there's nothing in an estate account that I know of and the two parties are trying to dinosaur. I have nothing further if the Court doesn't have any further questions. Thank you. I concur with the comments about that you cannot have a judgment in favor of dead people. There was some speculation going on here, which is totally outside of the briefs here, about what the procedures might have been in the court in Poland. But it boils down to this. We're not dealing with a small estate here, as opposing counsel made reference to. He's speculating about what happened in Poland. And if you look at the terms of the order, there is clearly no appointment of a personal representative. There had been no the information about this Polish court order was submitted at the time of the summary disposition hearing. There was no 213 compliance. And there's no apostille on this document. I mean the most fundamental item to make it admissible in evidence. It simply is not appropriate to not have an appropriate representative named in a judgment. And by the way, they have been proceeding to collect. And they're in the process now of taking Mrs. Kuzner's home. If you look at that document, the only thing that the counsel did was to look at the terms of the document. It does not establish Tomasz Kuzner or anyone else as a personal representative for the estate. The counselor authenticated the Polish documents the way that I read it. The Polish documents were authenticated by the Counselor General. No, it just says, authenticates the seal of the sworn translator, saying the sworn translator was recognized. It does not have an apostille for the document itself. And that's part of international treaty. But going on to opposing counsel's argument that there was a final determination in 2001. We're talking about the original August 2001 order. And he argues that that's law of the case. If that was so, then how could he then file a petition to totally reopen that, bring in evidence, get an entirely new and different damages remedy against a new party, not Old Kent Bank, regarding a totally different set of funds. He's arguing, he wants the court to treat it as non-final for his client, but final for Anna. That's an impermissible double standard. And it's simply not the case. We've pointed out in our reply brief that in the motion for reconsideration on that 2001 order, the court crossed out the sentence that says this is a final order by the judge, by the behavior of Tomas Kuznar, who went ahead to file petitions to get more relief, nor was it by Judge Coleman, who in 2009 totally added an entirely new remedy against a different party regarding a different class of damages, which were the funds that were paid out. So to argue that somehow that was law of the case, it doesn't follow. And plus, this court is not bound by the legal errors of the lower court. And so that argument simply doesn't fly. So I would submit that we're here to do justice. At this point, Mrs. Kuznar is in the process of losing her home. Is that what this court believes that the putative spouse statute would authorize? We simply think that this was an error of law to say that that statute didn't apply in this case. There was no final determination in 2001, as we've seen, or the appellee would never have gotten a 2009 order. The fact that the judge in 2001 erred means that the fact that the judge in 2009 also erred doesn't mean that we can't be arguing to this court that that 2009 order reiterated the same legal error regarding the putative spouse statute. I see on your argument that you can't have summary judgment in favor of the dead person. The only thing that's going to happen is we're going to declare the order void. And you're going back downstairs to start all over again. That's the only thing that's going to happen. We're not going to save anybody's house. We're not going to make any declarations. We're just going to say the order's void. Goodbye. That's all that can happen. Can't do any more. The rest of the advisory, we don't give advisory. Okay, counselors, thank you.